## Case No. 10,865.

### The P. C. SCHULTZ.

[10 Ben. 536.] [1]

District Court, E. D. New York. July, 1879.

TUG AND TOW—CONTRACT—SAFE PLACE—NEGLIGENCE OF MASTER—DELAY—COSTS.

1. Where a tug going up the Hudson river with several boats in tow, could not land one of the boats at the dock where it was destined in the then state of the tide. and left it at another safe place. to await the return of the tug on the next tide. and the boat having to be moved out of the way of other boats, was put by her master in a place where she took bottom before the next tide. and suffered damage for which action was brought, held, that it was not negligent in the tug to leave the boat in a safe place, where she did, to await the next tide.

2. It was negligent in the master of the tow to move his boat to an unsafe place. when there were other places open to him and known to be safe; and the libel must be dismissed.

3. The failure of the tug to return at the next tide showed a willingness to disregard the welfare of her tow, for which she should be refused costs.

4. A boat left by her tug to wait for her, in order to complete the towing contract, at a

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

place which though safe cannot be retained and from which the boat must move to an unsafe place, is not left in a safe place.

In admiralty.

Beebe, Wilcox & Hobbs, for libellant.
Benedict, Taft & Benedict, for claimant.

BENEDICT, District Judge. The evidence is sufficient to show that the contract made on behalf of the P. C. Schultz was to tow the libellant's canal-boat to Armstrong's dock, at Peekskill, but it was no part of the undertaking to place the boat there within any particular time. The weight of the evidence appears to be in favor of the assertion of the claimant, that when the tow arrived off Peekskill the tide had fallen so as to render it impossible then to place the boat at Armstrong's dock. This fact, however, did not render the performance of the contract impossible, or absolve the tow-boat from the obligation to take the canal-boat to Armstrong's dock. When the low state of the tide was found to render further progress toward's Armstrong's dock impossible at that time, it then became incumbent on the tow-boat, if, because of having in tow other boats bound further up the river, it was not advantageous to wait near Peekskill for the next tide, to place the libellant's boat at an adjacent safe place, and upon the next tide take her to the dock to which it had been agreed that the boat should be taken. No breach of contract was therefore committed when the libellant's boat was placed at Roy Hook dump, to await the return of the tow-boat on the next tide, provided that was a safe place for the boat to lie meanwhile. The evidence in regard to the character of Roy Hook dump as a safe place for a loaded canal-boat to lie is conflicting; but after careful consideration, I am satisfied that the boat could have remained at the dump in safety, if ordinary care had been exercised by her master. It is clearly shown that in the place where the canal-boat was left by the tow-boat there was abundant water for her safety, but subsequently the exigencies of another boat loading at the dump and outside of which the libellant's boat had been left compelled a change of position. If I was satisfied that the new position in which the libellant's boat was placed by her master, and where she afterwards sank, was as safe as any then and there available to her, I should consider the tow-boat responsible for the damage arising from the sinking of the boat in that place, because I am of the opinion that the tow-boat is chargeable under the circumstances with knowledge that the position she selected for the canal-boat was but temporary. A canal-boat left by a tow-boat to await the tow-boat's return in order to complete the towing contract, at a place which, although safe, cannot be retained, and from which the canal-boat must move to an unsafe place, is not left in a safe place.

In this instance it is proved by a witness called by the libellant, that the place to which the captain of the canal-boat moved his boat after the tow-boat had left, was one where she was certain to ground in the falling of the tide, and reasonable examination on his part, to say nothing of enquiry, would have informed him of the rocky nature of the bottom there. The case, as I view it, therefore, turns upon the question of fact whether, when the canal-boat was compelled to leave the place in which she was left by the tow-boat, there was another place there available to her where she could have remained in safety until the next tide. The evidence upon this point indicates that the boat could, without difficulty or expense, have been anchored in deep water where she would have been safe, and also that she could have been placed alongside the other boats at the dump where she would not have touched bottom; instead of which she was placed where, as the libellant's witness, Leach, says he knew she would sink, and where, in fact, she did sink, causing the damage complained of. Upon these facts, it must be held that the loss which the libellant has sustained was not caused by the failure of the tow-boat to perform the towing contract, but by the negligence of the master of the canal-boat in placing the libellant's boat in an unsafe place after the tow-boat had left.

Some stress has been laid upon the fact proved that the tow-boat having left the canal-boat at the dump on Friday morning, did not return until Sunday afternoon. If the disaster to the libellant's boat had been caused by the failure of the tow-boat to return in reasonable time for the purpose of taking the boat to Armstrong's dock, I should give a decree for the libellant; but the fact is that the canal-boat sank before the next tide, so that if the tow-boat had returned in time for the next tide, nothing could then have been done by her towards completing her contract. Performance of the contract had then been rendered impossible, by the negligence of the master of the canal-boat in placing his boat where she would strike upon rocks and sink. The failure of the tow-boat to return on the next tide under the circumstances, therefore caused no damage. The sinking of the canal-boat was, however, unknown to the tow-boat, and her failure to return to the canal-boat until Sunday afternoon indicates a disregard on the part of the tow-boat of her obligations towards the canal-boat left by her at the dump, which deserves condemnation and will be noticed by refusing costs.

If anything need be said in regard to the claim for breaking the rail when taking the canal-boat in tow, it is sufficient to remark that the damage claimed to have been done was very slight indeed, and the proof respecting it not clearly in favor of the libellant.

The libel will be dismissed, but without costs.